# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | | |
|---|---|---|
| N. SUGUMARAN NARAYANAN, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| MIDWESTERN STATE UNIVERSITY, | § | Jury Trial Demanded |
| | § | |
| Defendant | § | |

## ORIGINAL COMPLAINT

Plaintiff, N. Sugumaran Narayanan, files this Complaint against Defendant, Midwestern State University, as follows:

### I.   Preliminary Statement

This is an employment case. Plaintiff's Original Complaint is brought for willful violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., as amended by the ADA Amendments Act of 2008 ("ADAAA"), the Texas Labor Code Chapter 21, and under 29 U.S.C. § 794a (the Rehabilitation Act of 1973). Plaintiff's claims include discrimination claims based on race, national origin, and color under the Texas Labor Code and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII), the Texas Labor Code, and §1981. Plaintiff also brings retaliation claims under the Texas Labor Code and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Title VII). Plaintiff brings this civil action seeking legal and equitable remedies under these statutes.

## II.     Parties

2. Plaintiff N. Sugumaran Narayanan, Ph.D., is an individual resident of Wichita Falls, Wichita County, Texas.

3. Dr. Narayanan was at all relevant times, an *employee* of Defendant Midwestern State University as that term is defined in 42 U.S.C. § 2000e(f). Dr. Narayanan was notified of his termination by Midwestern State by letter dated May 20, 2020.

4. Defendant Midwestern State University is a public educational institution located in Wichita Falls, Wichita County, Texas.

5. At all relevant times Defendant was Dr. Narayanan's *employer* as that term is defined in 42 U.S.C. § 2000e(b).

## III.     Jurisdiction

6. This Court has subject matter jurisdiction of this civil action because Plaintiff's claims arise under Title VII and, thus, present a federal question under 28 U.S.C. §§ 1331 and 1343(a)(4).

7. This Court has personal jurisdiction over all parties to this civil action as Dr. Narayanan and Midwestern State University are residents of this state.

## IV.     Venue

8. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in this judicial district and because many employment records relevant to such employment practices are maintained in this district and division.

## V.     Facts

9. Midwestern State University (*MSU*) is regional state university founded as a local junior college in 1922. In 1961, the Texas Legislature included MSU (known as Midwestern University) in the Texas Colleges and Universities System. MSU offers a variety of academic programs in liberal and fine arts, mathematics, sciences, business, and applied sciences.

10. Dr. Narayanan received a Doctorate of Philosophy with a concentration in International Politics from the University of Alabama, Tuscaloosa with a 3.8 Grade Point Average in August 2008. His research interests include international and internal conflict, alliance behavior, Asia Pacific Politics, and American Foreign Policy.

11. MSU employed Dr. Narayanan effective September 1, 2007, as an Assistant Professor in the University's Political Science Department. He initially held the title of Instructor until he was awarded the Doctorate of Philosophy in 2008. He held the position of Assistant Professor continuously from September 1, 2008 until he was promoted to Associate Professor, effective September 1, 2015. He held the title of Associate Professor until he was notified of his termination by letter dated May 20, 2020.

12. In 2016, Dr. Narayanan filed suit against Midwestern State for denial of a promotion based on retaliation as well as race, color, and national origin. Because of retaliation for filing the 2016 lawsuit, in January of 2019, Dr. Narayanan filed another charge based on retaliation and continued discrimination based on race, color, and national origin.

13. Around the same time, Dr. Narayanan started to have health problems in 2017-2018 and were initially stress related – anxiety and hypertension. He requested and was granted leave, but once he recovered, he was denied additional paid work he had received in the past.

14. Specifically, Dr. Narayanan requested to teach summer classes for MSU's summer of 2018 session, and in fact had rearranged his schedule based on the understanding that he would be able to teach summer classes.

15. Instead of being allowed to teach, and at the last-minute, Dr. Narayanan was told that he would not be allowed to teach summer classes based on taking protected medical leave. This caused lost income that he hereby seeks in addition to other damages.

16. In addition to anxiety and hypertension, Dr. Narayanan developed cervical spondylotic myelopathy.

17. Cervical spondylotic myelopathy is a neck condition that arises when the spinal cord becomes compressed—or squeezed—due to the wear-and-tear changes that occur in the spine as we age. It is a well-known cause of disability. A significant number of patients are asymptomatic. Once the symptoms start, the worsening may follow a progressive manner. In Dr. Narayanan's case, the pain and stress associated with a chronic, painful condition also aggravated his anxiety and was further complicated by serious hypertension.

18. At the time Dr. Narayanan developed symptoms related to his cervical spondylotic myelopathy in 2019, he was in Malaysia, where he had traveled in order to attend a work related, official conference and perform work benefitting MSU over the Christmas break.

19. Dr. Narayanan is originally from Malaysia and his academic focus is Southeast Asia. Dr. Narayanan's doctor instructed him that traveling long distances could jeopardize his health – in fact, it is likely his original travel was an aggravating factor for his disability.

20. Dr. Narayanan was granted a leave of absence by MSU for the spring semester 2019. Because he was not yet able to return to work for fall of 2019, he contacted MSU several weeks before classes started to discuss his ongoing medical problems.

21. During his leave of absence in the spring of 2019, at no time did MSU reach out to him to inquire about his health condition or ability to return. Because he had not heard anything, he reached out to MSU's human resources and disability services department to make arrangements for an accommodation. Dr. Narayanan was told that he qualified as a person with a disability and received the following message before classes began:

> I wanted to let you know that your application and documentation have been processed. After review, it was determined that you do qualify as a person with a disability as defined by the Americans with Disabilities Act. The accommodations recommended on the enclosed form are guidelines and will need to be discussed with your supervisor in relation to your job assignments and how best to provide services for you. The recommendations should be granted unless doing so would fundamentally alter your essential job duties or doing so could be an undue burden to the department.

22. After classes began, he was told that it was being proposed that his tenure would be revoked because he could not return to school before the start of classes. Dr. Narayanan pursued reinstatement through all available channels, including seeking reinstatement through a hearing. The hearing, by policy, is required to be heard by a committee of peers, but the committee convened by MSU consisted almost solely of Department Heads and Deans, not peer faculty. MSU terminated Dr. Narayanan in May of 2020.

## VI. Exhaustion of Administrative Remedies

23. Dr. Narayanan dually filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") against Midwestern State University ("MSU") asserting race, color and national origin discrimination claims in addition to an employment retaliation claim. Later, Dr. Narayanan filed a charge based on disability discrimination and failure to accommodate a disability. This lawsuit is being filed on both charges. The EEOC assigned Charge Nos. 450-2019-01705 and

450-2020-02185 to the matter. Dr. Narayanan timely filed the charge within 180 days of the most recent acts of discrimination and retaliation.

24. Dr. Narayanan has exhausted his administrative remedies under federal law. More than 180 days have elapsed since he filed his charge of discrimination and retaliation with the EEOC. On March 31, 2021 the EEOC issued to Dr. Narayanan a notice of his right to file a civil action under Title VII and the Americans with Disabilities Act. This action is timely filed within 90 days of his receipt of that notice.

## VII. Causes of Action

### A. Disability Discrimination/Retaliation Under the ADA, Rehabilitation Act, and the Texas Labor Code

25. Plaintiff suffers from a disability, specifically: cervical spondylotic myelopathy, anxiety, and hypertension.

26. Defendant violated the ADAAA, the Texas Labor Code, and the Rehabilitation Act by refusing to reasonably accommodate Plaintiff's disabilities and by discharging Plaintiff secondary to his disability. Specifically, Defendant refused to engage in the interactive process and provide leave or assign Plaintiff to a schedule which would accommodate his disability.

27. Defendant retaliated against Plaintiff because of his disability and because he took leave for his medical condition and the stress he suffered as a result of having these conditions and taking leave.

28. Defendant violated by the ADAAA, the Texas Labor Code, and the Rehabilitation Act by refusing to grant a leave extension and to return Plaintiff to work following his leave of absence.

29. Plaintiff was at all relevant times qualified to perform the essential functions of his job. Plaintiff is a qualified individual with a disability, is a qualified individual with a record of a disability, and/or was regarded by the Defendant as a person with a disability.

30. Plaintiff was terminated as a direct result of his disability, his record of having a disability, and/or because Defendant regarded Plaintiff as a person with a disability. He was further terminated in retaliation for his reporting that he was being discriminated against because of his disability and because he sought accommodation for his disability.

31. Defendant wholly failed to enter into the interactive process with Plaintiff, firing him instead.

### B. Race, National Origin, and Color Discrimination under Title VII, the Texas Labor Code and §1981

32. Dr. Narayanan incorporates by reference the allegations contained in paragraphs 1 to 31, inclusive, as if those allegations were set forth herein verbatim.

33. Dr. Narayanan's race, Asian, National Origin (Malaysian) and color (brown[1]) was a motivating factor for Defendant's decision not to allow him to teach summer classes. Defendant thus committed an unlawful employment practice in violation of 42 U.S.C. § 2000e-2, the Texas Labor Code, and the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981.

34. Dr. Narayanan has sustained substantial lost wages and employment benefits by reason of Defendant's commission of an unlawful practice. Accordingly, he is entitled to an award of back pay with prejudgment interest in accordance with 42 U.S.C. § 2000e-5(g).

---

[1] Color discrimination occurs when a person is discriminated against based on his/her skin pigmentation (lightness or darkness of the skin), complexion, shade, or tone. Color discrimination can occur between persons of different races or ethnicities, or even between persons of the same race or ethnicity. For example, an African American employer violates Title VII if he refuses to hire other African Americans whose skin is either darker or lighter than his own.

35. In reasonable probability, Dr. Narayanan will sustain future lost wages and employment benefits by reason of Defendant's commission of an unlawful employment practice. He seeks affirmative injunctive relief by an order directing MSU to reinstate him to the position of Associate Professor or other equivalent relief. Alternatively, in the event reinstatement is not feasible, he is entitled to an award of front pay with prejudgment interest thereon pursuant to 42 U.S.C. § 2000e-5(g).

36. Dr. Narayanan is further entitled to recover compensatory damages for past and future mental anguish, injuries to his reputation and other non-pecuniary losses, with prejudgment interest, in accordance with 42 U.S.C. § 1981a.

37. Dr. Narayanan is entitled to recover attorney and expert fees and costs pursuant to 42 U.S.C. § 2000e-5(k).

### C. Retaliation

38. Dr. Narayanan incorporates by reference the allegations contained in paragraphs 1 to 37, inclusive, as if those allegations were set forth herein verbatim.

39. Dr. Narayanan's protected activity was a motivating factor in its decision to deny him paid work. Thus, Defendant has committed an unlawful employment practice in violation of 42 U.S.C. § 2000e-2.

40. Dr. Narayanan seeks, and is entitled to, a permanent injunction restraining and enjoining Defendant from committing unlawful employment practices with respect to promotion decisions based on retaliation.

41. Dr. Narayanan has sustained substantial lost wages and employment benefits by reason of Defendant's commission of an unlawful employment practice. Accordingly, he is entitled to an award of back pay with prejudgment interest thereon in accordance with 42 U.S.C.

§ 2000e-5(g).

42. In reasonable probability, Dr. Narayanan will sustain future lost wages and employment benefits by reason of Defendant's commission of an unlawful employment practice. He seeks affirmative injunctive relief by an order directing MSU to reinstate his employment. Alternatively, in the event reinstatement to the rank of Associate Professor is not feasible, he is entitled to an award of front pay with prejudgment interest thereon pursuant to 42 U.S.C. § 2000e-5(g).

43. Dr. Narayanan is further entitled to recover compensatory damages for past and future mental anguish, injuries to his reputation and other non-pecuniary losses, with prejudgment interest, in accordance with 42 U.S.C. § 1981a.

44. Dr. Narayanan is entitled to recover attorney and expert fees and costs under 42 U.S.C. § 2000e-5(k).

## VIII. Prayer

Wherefore, Plaintiff N. Sugumaran Narayanan respectfully prays that upon trial of this action, the Court awards him a judgment against Defendant Midwestern State University for the following relief:

1. A permanent injunction restraining and enjoining Defendant from engaging in unlawful employment practices based on race, color, national origin and retaliation against employees for engaging in protected activities;

2. An order directing Defendant to reinstate Plaintiff to Associate Professor in the Political Science Department with all compensation, privileges and benefits associated with such rank and title or, alternatively, front pay;

3. Back pay;

4. Compensatory damages for past and future emotional distress, injuries to reputation, and other non-pecuniary injuries;

5. Prejudgment and post judgment interest at the rates provided by law;

  6. Attorney and expert fees and court costs;

  7. Such further legal and equitable relief to which Plaintiff may be justly entitled.

## IX. Jury Demand

Plaintiff hereby demands a trial by jury in accordance with federal law.

Dated June 22, 2021.

            Respectfully submitted,

            */s/ Edith K. Thomas*
            Edith K. Thomas, Bar No. 24060717
            edith@ediththomaslaw.com
            LAW OFFICES OF EDITH K. THOMAS, PLLC
            777 Main Street
            Suite 600
            Fort Worth, Texas 76102
            Telephone: (888) 760-0149
            Facsimile: (972) 692-7988